# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HARVEY L. PITTS, | ) |
|         Plaintiff, | ) |
| v. | ) Case No. CIV-06-252-SPS |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) |
|         Defendant. | ) |

## OPINION AND ORDER

The claimant Harvey L. Pitts requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national

economy . . ." *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that claimant establish he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See id*. §§ 404.1521, 416.921. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity (RFC) to perform his past relevant work. If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant–taking into account his age, education, work experience, and RFC–can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on July 3, 1960, and was 44 years old at the time of the administrative hearing. He has a GED and previously worked as a truck driver and laborer. The claimant alleges he has been unable to work since October 30, 1999, because of burns on his feet and ankles; pain in his knees, shoulder, and back; hearing loss; headaches; hemorrhoids; and memory loss.

## Procedural History

On June 23, 2003, the claimant protectively filed an application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401- 434, and an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385. Both applications were denied. After a hearing on February 22, 2005, ALJ Peter M. Keltch found that the claimant was not disabled in a decision dated February 24, 2006. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a wide range of medium work, *i. e.*, lifting and/or carrying of 50 pounds occasionally and 25 pounds frequently, standing and/or walking for at least six hours total in an eight-hour workday, and sitting for

at least six hours total in an eight-hour workday. The claimant was further limited to only occasional stooping. The ALJ concluded the claimant could perform his past relevant work as a truck driver (Tr. 24-25).

**Review**

The claimant contends that the ALJ erred: (i) by finding he had the RFC to perform his past relevant work or substantial gainful activity; and, (ii) by improperly analyzing his credibility. The Court finds the claimant's second contention persuasive.

The record reveals that the claimant had severe impairments of status post burn of the ankles and feet with minimal scarring and keloid, status post right knee arthroscopy, and peripheral polyneuropathy (Tr. 16-17). At the administrative hearing, the claimant testified that he suffered severe third-degree burns on his feet and toes during a grease fire at his house. Because of the burns, the claimant lost movement in his toes and felt constant pain. Putting weight or pressure on his toes or the balls of his feet caused him "spasmodic pain." (Tr. 232). The pain was worse in the left foot, and he experienced numbness and tingling in the ends of his toes continuously (Tr. 233-34). The claimant had cramps at least two to three times per day in his feet and calves. According to the claimant, a doctor he recently saw believed he had muscle and neurological damage and recommended he see a neurologist. At the time of the hearing, the claimant was waiting to see a neurologist and was told it might be two to four months. The claimant was uncertain how much it would cost or if he would be able to afford the treatment (Tr. 234, 242). He did not have a treating physician or insurance, and his mother had been paying most of his medical expenses (Tr. 231, 236). The

claimant also had undergone two surgeries on his right knee, and he still was suffering from continuous pain in the right knee and also in the left with pain sometimes moving into his low back (Tr. 235). His ankles swelled if he climbed too many stairs or tried to climb a ladder, and he kept his legs and feet elevated most of the day to relieve his pain. He took over-the-counter medication (Tr. 236-37), only slept three to four hours per night, and it was pain that normally woke him (Tr. 237-38). He had gained 50 pounds since his accident and his social activity consisted of riding along with his mother to visit his sister (Tr. 238). The claimant testified he could sit between an hour and an hour and a half, stand about 10 to 15 minutes before having to lie down, walk on level ground about 50 yards, and lift 15 to 20 pounds. The claimant did not drive because it required that he put pressure on the bottoms of his feet and caused him spasms (Tr. 239). He had problems bending and squatting and used a cane to help with his balance. The claimant did not do any cooking or cleaning and spent most of the day in his recliner or in bed (Tr. 240-41). He testified he could not wear socks or shoes because of the pain in his feet unless he modified the shoes. He only took showers approximately twice per week because the water hitting his feet in the shower caused him pain (Tr. 241-42).

In his written decision, the ALJ summarized some of the claimant's testimony and specifically mentioned: (i) that the claimant's testimony was inconsistent about whether or not he could wear shoes; (ii) that he failed to seek "significant specialized evaluation and/or treatment for his alleged impairments"; and, (iii) that the report of malingering from Dr. Sherman Lawton, M.D., supported a finding that the claimant tended to exaggerate his

symptoms. The ALJ determined that "the preponderance of the medical evidence . . . [was] not consistent with the degree of impairment and/or limitations alleged by the claimant[,]" and concluded that "the claimant ha[d] exaggerated his allegations of pain and other symptoms to the extent that he contend[ed] he [was] unable to perform the exertional requirements of medium work activity, with only occasional stooping." (Tr. 24).

Deference must be given to an ALJ's credibility determination unless the ALJ misread the medical evidence taken as a whole. *Casias,* 933 F.2d at 801. An ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 512 (10th Cir. 1987). But credibility findings should be closely and affirmatively linked to the evidence and not just a conclusion in the guise of findings. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). The analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

The ALJ's analysis of the claimant's credibility in this case fell below the foregoing standards. For example, the ALJ noted the inconsistency in the claimant's testimony regarding his wearing shoes. Although the claimant testified he could not wear shoes, he clarified his testimony by indicating that he had to modify his shoes in order to wear them (Tr. 241-42). Further, when the ALJ noted that the claimant failed to seek "significant specialized evaluation and/or treatment," he was primarily referring to the claimant's evaluation and treatment from a neurologist regarding the problems with his feet and legs.

But the ALJ did not discuss the four-part test applicable to any failure to pursue treatment: (i) whether treatment would have restored the claimant's ability to work; (ii) whether treatment was prescribed; (iii) whether treatment was refused; and, (iv) whether the excuse was justified. *Frey*, 816 F.2d at 517. *See also Teter v. Heckler*, 775 F.2d 1104, 1107 (10th Cir. 1985). And the ALJ failed to mention the claimant's testimony that he was in the process of trying to see a neurologist but there was a possibility that his financial situation might preclude his being able to afford such an evaluation or any treatment (Tr. 234, 242). *See, e.g., Thompson v. Sullivan*, 987 F.2d 1482, 1489-90 (10th Cir. 1993) (inability to pay for recommended treatment may justify the failure to follow the treatment). *See also Thomas v. Barnhart*, 147 Fed. Appx. 755, 760 (10th Cir. 2005) ("[T]he medicine or treatment an indigent person cannot afford is no more a cure for his condition than if it had never been discovered . . . To a poor person, a medicine that he cannot afford to buy does not exist.") [unpublished opinion], *quoting Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

The ALJ also found the claimant was not credible because he exaggerated his symptoms. In making this finding, the ALJ relied on Dr. Lawton's examination of the claimant and his findings that the claimant was malingering. Although Dr. Lawton's examination of the claimant showed give-way type weakness in the muscles of both the arms and legs without support from organic findings, he indicated that it was possible the claimant had some degree of neuropathy based on his family history of diabetes and the absence of reflexes in his ankle. He thought it was unlikely that the claimant's lack of upward and downward movement on the second, third, and fourth toes on the left was related to his burns

because there was not significant scarring of the feet, but he could not exclude this as the cause of the claimant's problems (Tr. 192). In assessing the claimant's functional limitations, Dr. Lawton again commented that although non-organic features predominated his examination of the claimant, it was possible the claimant had some organic problems in his feet (Tr. 196). Further, an electromyography and nerve conduction study performed on the claimant's lower extremities revealed that although there was no evidence of acute or chronic denervation, there was evidence for a peripheral polyneuropathy affecting all of the nerves in both legs (Tr. 198-201). The ALJ, however, mentioned none of these findings in his credibility anlaysis which lent at least some support to the claimant's complaints. *See Hardman*, 362 F.3d at 681 (noting that ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("[The] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper."). *See also Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Because the ALJ failed to discuss probative evidence relevant to his credibility determination in accordance with *Kepler* and *Hardman*, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis of the claimant's

credibility so the Court can assess "whether relevant evidence adequately supports the ALJ's conclusion." *Clifton*, 79 F.3d at 1009. On remand, the ALJ should: (i) complete the analysis under *Frey* with regard to the claimant's pursuit of treatment; (ii) determine whether the claimant's subjective complaints result in further functional limitations, and if so, include those limitations in the claimant's RFC; and, (iii) redetermine what work, if any, the claimant can perform and whether he is disabled.

**Conclusion**

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 19th day of September, 2007.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**